1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11              Plaintiff,                    No. CIV S-10-2805 KJM EFB

12        vs.

13   TERESA MARTY,
                                             ORDER AND
14              Defendant.                   FINDINGS AND RECOMMENDATIONS
     _____/

15

16        This case was referred to the undersigned pursuant to Eastern District of California Local

17   Rule 302(c)(19) and 28 U.S.C. § 636(b)(1) for hearing on plaintiff's second motion for entry of

18   default judgment against defendant Teresa Marty.  Dckt. No. 13.

19        On July 20, 2011, the court heard plaintiff's original motion for default judgment.  Dckt.

20   No. 7.  Attorneys Yoshinori Himel and Guy Jennings appeared at the hearing on plaintiff's

21   behalf; defendant appeared in pro se.  The court construed defendant's appearance at the hearing

22   as a motion pursuant to Federal Rule of Civil Procedure 55(c) to set aside the clerk's entry of

23   default and as an opposition to plaintiff's motion for default judgment. Dckt. No. 11.  At the

24   hearing, plaintiff's counsel indicated that it would withdraw the motion for default judgment and

25   would stipulate to set aside the clerk's entry of defendant's default.  The court then gave

26   defendant a deadline for filing an answer to plaintiff's complaint, and stated that once defendant

1

filed an answer, the clerk's entry of default against her would be set aside.  *Id.*  However, on August 1, 2011, defendant filed a notice with the court indicating that she is "choosing not to file an objection" to the case.  Dckt. No. 12.  Accordingly, on August 3, 2011, plaintiff filed its second motion for default judgment, and noticed the motion for hearing on September 14, 2011. Dckt. No. 13.

For the reasons stated herein, as well as for the reasons stated at the July 20, 2011 hearing on plaintiff's original default judgment motion, the court vacates the September 14, 2011 hearing on plaintiff's second default judgment motion and recommends that the motion be granted.

I.      BACKGROUND

On October 18, 2010, the United States filed a complaint against Teresa Marty, seeking "to obtain a judicial declaration that certain documents filed by defendant Teresa M. Marty with the Secretary of State of the State of California against certain employees of the United States are null, void and without legal effect; to expunge public records of the filings; and to enjoin the defendant from all future filings of similar documents."  Dckt. No. 1, Compl. ¶ 1.  The action is brought pursuant to 26 U.S.C. § 7402.

The complaint alleges as follows:

•       In 2009, defendant Teresa M. Marty was an Enrolled Agent preparing tax returns for herself and others using a fraudulent tax refund scheme.  This Court entered an injunction against Marty to bar her from acting as a tax return preparer for others and to forbid her from making any false claims on her tax returns.  *United States v. Teresa M. Marty*, Civil Case No. 2:09-CV-00600 FCD EFB (E.D. Cal. 2010) (Doc. 64) (the "injunction suit")." Compl. ¶ 5.

•       "On January 25, 2009, Teresa M. Marty filed with the Secretary of State of the State of California a UCC Financing Statement, Document Number 09-7185584360, ("UCC Financing Statement").  She then filed a series of amendments to the initial filing . . . . The UCC Financing Statements had the effect of falsely describing as debtors the

2

following persons: (1) John R. Monroe, (2) Hon. Lawrence G. Brown, (3) David P. Alito, (4) Dean H. Prodromos, and (5) Richard Stefanski (hereinafter collectively, the "named persons"). The UCC Financing Statements also contain private and personal information of the named persons."  Compl. ¶ 6.

- "In 2009, Alito, Prodromos, and Stefanski were officers or employees of the Internal Revenue Service who were involved in (1) obtaining an injunction against Marty or (2) the collection of unpaid tax from defendant Marty. John R. Monroe is an attorney in the United States Department of Justice, Tax Division, who litigated the injunction suit against Marty. The Honorable Lawrence G. Brown at the time of the injunction suit was the United States Attorney for the Eastern District of California. Lawrence G. Brown is now a judge for the Sacramento Superior Court."  Compl. ¶ 7.

- "The UCC Financing Statements were filed by defendant Marty in retaliation for the acts performed by the officers and employees of the United States as part of their official duties, under their authority as officers, or under the direction of officers, of the United States of America."  Compl. ¶ 8.

- "The UCC Financing Statements, which purport to encumber the real and personal property of the named persons in a lien amount exceeding $84,000,000, are specifically designed to cause substantial interference with the enforcement of the laws of the United States pertaining to the internal revenue and to molest, interrupt, hinder, intimidate or impede employees or officers of the United States in the good faith performance of their official duties."  Compl. ¶ 9.

- "The UCC Financing Statements are without any legal basis whatsoever, and are solely designed to harass federal officers and employees in their personal lives for the performance of their official duties, and thus impose immediate and irreparable harm upon them."  Compl. ¶ 10.

- "The UCC Financing Statements impose an immediate and irreparable injury upon the

1   United States of America by impeding, obstructing and impairing the execution of the

2   official duties of its employees or officers."  Compl. ¶ 11.

3   •   "The public interest will be served by an order declaring the UCC Financing Statements

4       to be null and void, and permanently enjoining the defendant, Teresa M. Marty, and all

5       those in active concert or participation with her from filing, or attempting to file, any

6       document or instrument which (1) purports to create a nonconsensual lien against the

7       property of any federal officer or employee, or which (2) contains any personal

8       information (such as the social security number or the residence address) of any federal

9       officer or employee."  Compl. ¶ 12.

10      The motion for default judgment also contends that Dean Prodromos, named in the UCC

11  Financing Statements, is a Revenue Officer for the Internal Revenue Service who was assigned

12  to collect a fraudulently-obtained refund from defendant.  Dckt. No. 7-5, Decl. of Dean

13  Prodromos in Supp. of Mot. for Default J., ¶¶ 1-2.  Officer Prodromos had no contact or

14  relationship with Marty other than in his official capacity with the Internal Revenue Service, and

15  there are no facts which would support the filing by Marty of a UCC Financing Statement

16  against Prodromos.  *Id.* ¶¶ 3-4.  Prodromos is concerned that the disclosures of his personal

17  information in the UCC filings may have exposed him to identity theft and that the UCC filings

18  may have a negative impact on his credit record.  *Id.* ¶ 5.

19      Additionally, John R. Monroe is an attorney in the United States Department of Justice,

20  Tax Division, who litigated the injunction suit against Marty.  Dckt. No. 7-3, Decl. of John

21  Monroe in Supp. of Mot. for Default J., ¶¶ 1-2.  As with Officer Prodromos, Monroe had no

22  contact or relationship with Marty other than in Monroe's official capacity as a trial attorney for

23  the United States Department of Justice, and there are no other facts which would support the

24  filing by Marty of a UCC Financing Statement against Monroe.  *Id.* ¶¶ 3-4.  Monroe is concerned

25  that the UCC filings may have a negative impact on his credit record.  *Id.* ¶ 5.

26  ////

4

A certificate of service, filed November 15, 2010, demonstrates that the summons and complaint were personally served on defendant Marty on November 10, 2010.  Dckt. No. 4.  On February 4, 2011, pursuant to plaintiff's request, the Clerk of Court entered the default of defendant Marty.  Dckt. Nos. 5, 6.  On June 6, 2011, plaintiff filed a motion for default judgment, and mail served a copy of the motion on defendant.  Dckt. No. 7.  Defendant appeared at the July 20, 2011 hearing on that motion, but thereafter indicated that she would not be filing an answer to plaintiff's complaint.  Dckt. No. 12.  Plaintiff then filed a second motion for default judgment, which was also mail served on defendant.  Dckt. No. 13.  Defendant has not filed any opposition to the motion.

Plaintiff's second motion for default judgment seeks a declaration that the following UCC Financing Statements and amendments are null, void, of no legal effect, and shall be expunged by the California Secretary of State so that the personal identity and information on the filings cannot be retrieved electronically:

- UCC-1 – Filing No. 09-7185584360 – filed on January 25, 2009;
- UCC-3 – Filing No. 09-72182211 – filed on March 12, 2009;
- UCC-3 – Filing No. 09-72178432 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178435 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178468 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178499 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178511 – filed on December 23, 2009; and
- UCC-3 – Filing No. 09-72178528 – filed on December 23, 2009.

Plaintiff also seeks an order permanently enjoining "Defendant Teresa M. Marty, her agents, employees, and any other affiliated persons . . . from filing or attempting to file any document or instrument which purports to create any non-consensual lien or encumbrance against the person or property of any officer or employee of the United States, unless this Court permits the filing."  Dckt. No. 7-6.

II.   DISCUSSION

    A.   Standards

    It is within the sound discretion of the district court to grant or deny an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc*., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

    As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted).  However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts *not* contained in the pleadings, and claims which are *legally insufficient*, are *not* established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

    B.   Entitlement to Default Judgment

    Here, the court finds that the majority of the *Eitel* factors weigh in favor of granting default judgment to plaintiff.

    1. Possibility of Prejudice to Plaintiff

    The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of entering default judgment. *See PepsiCo, Inc*., 238 F. Supp.2d at 1177.  Here, plaintiff would potentially

1  face prejudice if the court did not enter default judgment because absent entry of default

2  judgment, plaintiff would be without another recourse for recovery.  Also, if the UCC Financing

3  Statements are not expunged, the harassment of the government employees will continue.

4  Accordingly, the first *Eitel* factor favors the entry of default judgment.

5              2/3.  <u>Merits of Plaintiff's Substantive Claim/Sufficiency of the Complaint</u>

6        The second and third factors also favor the entry of default judgment.  As a general rule,

7  once default is entered, the factual allegations of the complaint are taken as true, except for those

8  allegations relating to the damages.  *TeleVideo Systems, Inc.*, 826 F.2d at 917-18.  Here, Marty

9  has filed a series of sham UCC Financing Statements with the State of California purporting to

10  impose liens on the personal property of employees of the United States.  The filings are false

11  and intended to harass government employees engaged in their official duties.

12        Section 7402(a) of the Internal Revenue Code (Title 26) provides that "[t]he district

13  courts of the United States at the instance of the United States shall have such jurisdiction to

14  make and issue in civil actions, writs and orders of injunction, . . . and such other orders and

15  processes, and to render such judgments and decrees as may be necessary or appropriate for the

16  enforcement of the internal revenue laws."  26 U.S.C. § 7402(a).  Section 7402 demonstrates

17  "congressional intention to provide the district courts with a full arsenal of powers to compel

18  compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir.),

19  *cert. denied*, 354 U.S. 923 (1957).  "[T]here need not be a showing that a party has violated a

20  particular Internal Revenue Code section in order for an injunction to issue [under § 7402(a)].

21  The language of § 7402(a) encompasses a broad range of powers necessary to compel

22  compliance with the tax laws." *United States v. Edwards*, 2008 WL 1925243, at *3-5 (E.D. Cal.

23  Apr. 30, 2008) (quoting *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir.

24  1984)).

25        "The United States has standing to seek relief from actual or threatened interference with

26  the performance of its proper governmental functions."  *United States v. Ekblad*, 732 F.2d 562,

7

563 (7th Cir. 1984).  Section 7402(a) empowers a district court "to void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes." *Ryan v. Bilby,* 764 F.2d 1325, 1327 (9th Cir. 1985).  Bogus liens have been asserted "to harass IRS employees and deter them from enforcing the tax laws.  The tax protestors, while claiming to act in the interests of freedom and personal liberty, use this weapon to harass private individuals in their private lives, as part of the tax protestors' campaign." *United States v. Van Dyke*, 568 F. Supp. 820, 821 (D. Or. 1983).  Such liens "threaten substantial interference with the administration and enforcement of the internal revenue laws and are calculated to molest, interrupt, hinder and impede officials of the Internal Revenue Service in the good faith performance of their official duties as employees of the government of the United States." *United States v. Hart*, 545 F. Supp. 470, 473 (D.N.D. 1982), *aff'd*, 701 F.2d 749 (8th Cir. 1983).

Under applicable California law, a lien is created by a contract between the parties or by operation of law.  Cal. Civ. Code § 2881.  Under California Commercial Code section 9203(b)(3)(A), a security interest in personal property is created by a security agreement between a debtor and secured party.  "In the absence of a valid security agreement, a financing statement does not create an enforceable security interest." *In re Wes Dor, Inc.*, 996 F.2d 237, 239 n.2 (10th Cir. 1993).

Here, Marty was engaged in a fraudulent tax refund scheme.  IRS collection activity ensued in parallel with a district court action to enjoin Marty from further marketing the scheme.  Marty retaliated against the IRS and Department of Justice employees who had no contact with her outside of their official duties.  The UCC Financing Statements were filed to intimidate and harass the named persons and this, in turn, interfere with the proper administration of the internal revenue laws of the United States.

No facts or agreements support the filing of the false liens.  Moreover, since the Clerk of Court has entered default against Marty, the allegations in the complaint are deemed admitted for purposes of default judgment.  Those facts are sufficient to show the United States is entitled to

relief in accordance with the case authorities discussed above.  Therefore, § 7402 authorizes this Court to declare the UCC Financing Statements and Amendments null and void, which they are. *See, e.g., Ryan v. Bilby*, 764 F.2d at 1327 (holding that (1) § 7402(a) empowers the district court to "void common-law liens imposed by taxpayers on the property of government officials assigned to collect delinquent taxes," and (2) the district court thus had jurisdiction to release "baseless" "common-law liens" against judge, magistrate judges, and attorneys involved in taxpayer's prosecution for failure to file tax returns); *Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1034-37 (9th Cir. 1985); *United States v. Edwards*, 2008 WL 1925243, at *3-5 (voiding sham UCC financing statements filed by taxpayer, and permanently enjoining taxpayer from filing any document or instrument purporting to create non-consensual liens or encumbrances against employees of the United States); *United States v. Tarantino*, 2007 WL 2062930, at *1 (E.D. Cal. July 16, 2007) (adopting magistrate judge's recommendation to (1) void UCC financing statements filed by taxpayer against IRS employees, and (2) permanently enjoin taxpayer from filing any documents or instruments of that kind against any employee of the federal government); *United States v. Dutson*, 2007 WL 934726, at *1 (E.D. Cal. Mar. 27, 2007) (same); *United States v. Roy*, 2007 WL 614002, at *1 (E.D. Cal. Feb. 27, 2007) (same); *United States v. Molen*, 2007 WL 587198, at *1 (E.D. Cal. Feb. 26, 2007) (same).

4. <u>Sum of Money at Stake</u>

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc*., 238 F. Supp.2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Here, no monetary damages are sought.  Rather, a more important issue is at stake: whether Marty's interference with a legitimate government function will be allowed to stand. Therefore, this *Eitel* factor favors the entry of default judgment.

////

////

1          5.  <u>Possibility of a Dispute Concerning the Material Facts</u>

2          The fifth factor also weighs in favor of granting plaintiff's request for default judgment.

3    The facts of this case are relatively straightforward, and plaintiff has provided the court with

4    well-pleaded allegations supporting its claims.  Here, the court may assume the truth of

5    well-pleaded facts in the complaint following the clerk's entry of default and, thus, there is a

6    very low likelihood that any genuine issue of material fact exists.  *See, e.g., Elektra Entm't*

7    *Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a

8    well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no

9    likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc*., 219

10   F.R.D. at 500; *PepsiCo, Inc*., 238 F. Supp.2d at 1177.

11         6.  <u>Whether the Default Was Due to Excusable Neglect</u>

12         The sixth factor also weighs in plaintiff's favor.  Marty was personally served with a

13   copy of the summons and complaint in this case, yet she has failed to answer.  In fact, even after

14   appearing at the hearing on plaintiff's initial default judgment motion and indicating that she

15   intended to file an answer, Marty subsequently filed a notice with the court indicating that she

16   did not have any "objection" to this case.  Dckt. No. 12.  Marty has refused to participate in this

17   case in any meaningful manner, and there is no reason to believe that she will ever do so.

18         7.  <u>Policy Favoring Decisions on the Merits</u>

19         Finally, only the seventh *Eitel* factor weighs against granting the motion for default

20   judgment.  The strong policy underlying the Federal Rules of Civil Procedure favors decisions

21   on the merits.  *Eitel*, 782 F.2d at 1472.  However, district courts have concluded with regularity

22   that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or

23   defend itself in an action.  *PepsiCo, Inc*., 238 F. Supp.2d at 1177; *see Craigslist, Inc. v.*

24   *Naturemarket, Inc*., 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010); *ACS Recovery Servs.,*

25   *Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan.11, 2010); *Hartung v. J.D. Byrider, Inc*.,

26   2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009).  Accordingly, although there is a strong

1  policy favoring decisions on the merits, that policy does not by itself preclude entry of default

2  judgment.

3       Therefore, because the *Eitel* factors weigh in favor of granting default judgment to

4  plaintiff, the undersigned will recommend granting plaintiff's motion for default judgment.

5       C.      Injunctive Relief

6       Plaintiff seeks the issuance of an injunction permanently enjoining Marty from filing any

7  document or instrument which purports to create a non-consensual lien or encumbrance of any

8  kind against any employee of the federal government.

9       Under § 7402, district courts have jurisdiction to issue injunctions "as may be necessary

10 or appropriate for the enforcement of the internal revenue laws."  26 U.S.C. § 7402(a).  "The

11 requirements for the issuance of a permanent injunction are (1) the likelihood of substantial and

12 immediate irreparable injury, and (2) the inadequacy of remedies at law."  *Montana v. BNSF Ry.*

13 *Co.*, 623 F.3d 1312, 1317, n.3 (9th Cir. 2010) (quoting *G.C. and K.B. Invs., Inc. v. Wilson*, 326

14 F.3d 1096, 1107 (9th Cir. 2003)).[1]  Additionally, "[i]n cases where the public interest is involved,

15 the district court must also examine whether the public interest favors the plaintiff."  *Fund for*

16 *Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

17      Here, Marty engaged in conduct subject to injunction under § 7402 and the United States

18 will likely suffer irreparable harm in the absence of an injunction prohibiting Marty from filing

19 non-consensual liens or encumbrances against United States employees.  Absent an injunction,

20 Marty will likely continue to violate § 7402 and interfere with the enforcement and

21 administration of the internal revenue laws, especially since she has not acknowledged that the

22

23      [1] Although it is unclear in the Ninth Circuit whether plaintiff must only meet the criteria
set forth in § 7402(a) to merit injunctive relief or whether plaintiff must also establish the
24 traditional equitable factors for an injunction, because the equitable requirements for the
issuance of a permanent injunction are met here, that issue need not be reached.  *See, e.g., United*
25 *States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000) (finding, with regard to I.R.C.
§ 7408, that the "traditional requirements for equitable relief need not be satisfied since [the
26 statute] expressly authorizes the issuance of an injunction").

UCC Financing Statements and Amendments she filed were frivolous.  Without the permanent

injunction plaintiff seeks, government employees are likely to face substantial and immediate

irreparable injury (personal distress, clouding of title to property they own, and/or damaging

their credit ratings), and their ability to discharge their official duties to collect federal taxes will

be interrupted and/or hindered.  *See United States v. Edwards*, 2008 WL 1925243, at *4 (finding

that the defendant's filing of frivolous UCC Financing Statements caused irreparable harm, and

stating that "Government employees deserve protection from [these] reckless, frivolous

filings."); *United States v. Van Dyke*, 568 F. Supp. 820, 822 (D. Or. 1983) (defendant's actions

"in filing these lawsuits and documents, impose irreparable harm upon the employees of the

federal government with whom these tax protestors quarrel").

Apart from an injunction, the United States has no means, civilly, of stopping Marty from

filing frivolous liens against government employees.  Further, because the UCC Financing

Statements and Amendments are without factual or legal basis, and thus have no force or legal

effect, Marty not be injured by an injunction which provides that she cannot record similar non-

consensual liens or encumbrances in the future.  Additionally, the public's interests in fair

administration of federal tax laws and prevention of abuse and harassment of government

employees supports the imposition of the permanent injunction plaintiff seeks.  Accordingly, the

permanent injunction that plaintiff seeks under § 7402 is necessary and appropriate for the

enforcement of the internal revenue laws.

III.    <u>CONCLUSION</u>

Based on the foregoing findings, IT IS HEREBY ORDERED that the September 14,

2011 hearing on plaintiff's second default judgment motion be vacated.

IT IS FURTHER RECOMMENDED that:

1.  Plaintiff's second motion for default judgment against defendant Teresa M. Marty,

Dckt. No. 13, be GRANTED.

////

2.  The following UCC Financing Statements and amendments be declared null, void, and of no legal effect, and be expunged by the California Secretary of State so that the personal identity and information on the filings cannot be retrieved electronically:

- UCC-1 – Filing No. 09-7185584360 – filed on January 25, 2009;
- UCC-3 – Filing No. 09-72182211 – filed on March 12, 2009;
- UCC-3 – Filing No. 09-72178432 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178435 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178468 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178499 – filed on December 23, 2009;
- UCC-3 – Filing No. 09-72178511 – filed on December 23, 2009; and
- UCC-3 – Filing No. 09-72178528 – filed on December 23, 2009.

3.  Defendant Teresa M. Marty, her agents, employees, and any other affiliated persons be permanently enjoined from filing or attempting to file any document or instrument which purports to create any non-consensual lien or encumbrance against the person or property of any officer or employee of the United States, unless this Court permits the filing.

4.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 12, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE